IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF KENTUCKY
FRANKFORT DIVISION

| | |
|---|---|
| COMMONWEALTH OF KENTUCKY, *ex rel.* JACK CONWAY, ATTORNEY GENERAL<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>GLAXOSMITHKLINE LLC, formerly SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE;<br><br>　　　　Defendants. | CASE NO.: _____ |

## NOTICE OF REMOVAL

TO:　THE JUDGES OF THE UNITED STATES
　　　DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY:

　　　　PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1331, 1332, 1441 and 1446, defendant GlaxoSmithKline LLC, formerly known as SmithKline Beecham Corporation, ("GSK") hereby removes this case from the Commonwealth of Kentucky, Franklin Circuit Court to the United States District Court for the Eastern District of Kentucky.  This Court has subject matter jurisdiction over the action under 28 U.S.C. §§ 1331, 1332, and 1441 because (a) this action is removable under the Class Action Fairness Act ("CAFA"); and (b) the action raises substantial federal questions in connection with the federal regulatory scheme for the marketing of prescription drugs that are important to both the parties and the federal system.

I.　　**BACKGROUND**

　　　　1.　　The Commonwealth of Kentucky, through its Attorney General, commenced this action on February 20, 2013 in the Commonwealth of Kentucky, Franklin Circuit Court.  A copy of the Complaint is attached hereto as Exhibit A.  The Complaint was

#17941088 v3

served on February 22, 2013.  This Notice of Removal is timely filed within thirty (30) days after receipt by GSK of the initial pleading setting forth the claim for relief upon which the action is based.  *See* 28 U.S.C. § 1446(b).

2. This action involves the prescription medicine Avandia indicated as an adjunct to diet and exercise to improve glycemic control in adults with type 2 diabetes mellitus.

3. Plaintiff asserts statutory claims under the Kentucky False Advertising Statute; the Kentucky Food, Drug, and Cosmetic Act; the Kentucky Consumer Protection Act; and the Kentucky Insurance Code; as well as common law claims for unjust enrichment; strict products liability – failure to warn; strict products liability – design defect; fraud and negligent misrepresentation; negligence; breach of express warranty; breach of implied warranty; and public nuisance.

4. Plaintiff alleges that GSK engaged in wrongful and illegal promotion of Avandia by making misleading and deceptive claims regarding Avandia's efficacy and safety. Complaint ¶ 1.  Plaintiff alleges that as a result of this wrongful promotion of Avandia, health plans funded by the Commonwealth of Kentucky and Kentucky citizens who were prescribed Avandia have incurred costs for prescriptions of Avandia.  *See, e.g.,* Complaint ¶¶ 87-88.

5. Plaintiff seeks "restitution and disgorgement of all monies received by GSK as a result of" its alleged wrongdoing," as well as punitive damages, extensive civil penalties, costs, and fees.  *See* Complaint, ¶ 2, Prayer for Relief.

6. Plaintiff also seeks damages for the costs of care of alleged Avandia-related injuries sustained by participants in Commonwealth-funded health plans, including the establishment of a "fund to provide for the future medical treatment of Avandia-related conditions suffered by Kentucky citizens."  *See* Complaint ¶ 18, Prayer for Relief.

## II.     PLAINTIFF'S ACTION IS REMOVABLE UNDER CAFA

7. Removal is proper because this action is a "mass action" within the meaning of CAFA. *See* 28 U.S.C. § 1332(d)(11). CAFA defines a "mass action" for purposes of federal jurisdiction as "any civil action . . . in which monetary relief for claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." 28 U.S.C. § 1332(d)(11)(B)(i). A CAFA mass action requires monetary claims by 100 or more persons, an aggregate amount in controversy of at least $5,000,000, and plaintiffs who are at least minimally diverse from defendants. *Id.* A "mass action" must also satisfy the jurisdictional amount requirements under 28 U.S.C. § 1332(a), i.e. that the $75,000 amount in controversy requirement is met for at least one individual claim. *See id.*; *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1204 (11th Cir. 2007) (explaining that if each of the 100 or more claims were required to meet the $75,000 amount in controversy requirement, for a total of an aggregate amount in controversy requirement of at least $7,500,000, then CAFA's $5,000,000 aggregate amount requirement would be "mere surplusage," and that accordingly, it was "clear that the $75,000 provision was not intended to bar district courts from asserting jurisdiction over the entire case if each individual plaintiff's claims do not exceed $ 75,000"); *see also Miss. ex rel. Hood v. Entergy Miss., Inc.*, No. 3:08-cv-780, 2012 U.S. Dist. LEXIS 120299 (S.D. Miss. Aug. 25, 2012) (The "rationale that at least one plaintiff must meet the $75,000 individual amount in controversy requirement makes pragmatic sense.").

8. In *Louisiana ex rel. Caldwell v. Allstate Insurance Co.*, 536 F.3d 418 (5th Cir. 2008), the court held that a similar action brought by the State of Louisiana on behalf of its people, who were the real parties in interest, was a mass action under CAFA. *See also Mississippi ex rel. Hood v. AU Optronics Corp.*, 701 F.3d 796 (5th Cir. 2012) (finding CAFA mass action jurisdiction over a consumer protection action brought by the State of Mississippi

-3-

where the real parties in interest included purchasers of liquid crystal display panels); *West Virginia ex rel. McGraw v. Comcast Corp.*, 705 F. Supp. 2d 441, 450 (E.D. Pa. 2010) (In an action brought by the State of West Virginia seeking damages on behalf of a group of cable subscribers, real parties in interest included these subscribers for purposes of determining CAFA jurisdiction.)

9. In *AU Optronics*, the Fifth Circuit instructs that for purposes of determining the real parties in interest, the court should "pierce the pleadings and look at the real nature of a state's claims in order to prevent judicial gamesmanship." 701 F.3d at 799.[1]

10. Plaintiff's Complaint makes clear that the Commonwealth seeks relief on behalf of individual Kentucky consumers who were prescribed Avandia, including participants in the Commonwealth-funded health plans:

(a) For example, in Counts I and II and of the Complaint, the Plaintiff alleges that "Defendant has [] caused the citizens of Kentucky who took Avandia to incur costs in the form of funds paid for Avandia." Complaint ¶¶ 79-80, 87-88.

(b) Plaintiff seeks restitution under the Kentucky Consumer Protection Act. *See* Complaint ¶ 93, Prayer for Relief. The Kentucky Attorney General may seek such relief pursuant to Ky. Rev. Stat. § 367.200, which "vest[s] the Attorney General with the authority to seek restitution <u>on behalf of defrauded consumers</u>." *Commonwealth ex rel. Beshear v. ABAC Pest Control, Inc.*, 621 S.W.2d 705, 706 (Ky. Ct. App. 1981) (emphasis added).

---

[1] The Fifth Circuit recognized that its "claim-by-claim approach contrasts with other circuits that look to a state's complaint 'as a whole' and then subjectively determine if the state alone is the real party in interest." *State ex rel. Hood v. AU Optronics, Corp.*, 701 F.3d 796, 800 (5th Cir. Miss. 2012). The Sixth Circuit has not addressed how a court should determine real parties in interest in an action brought by a state attorney general for purposes of CAFA jurisdiction.

(c) Plaintiff also seeks reimbursement for costs of care of participants in Commonwealth-funded health plans who allegedly sustained injuries as a result of Avandia use. *See, e.g.,* Complaint ¶¶ 79, 87, 93. By seeking damages paid by Commonwealth-funded health plans for such medical care and expenses, the Commonwealth is essentially the subrogee for the claims of the real parties in interest, namely, the plan recipients who sustained these alleged injuries. *See AU Optronics*, 701 F.3d at 800 ("The real parties in interest . . . are those more than 100 persons who, by substantive law, possess the right sought to be enforced, and not necessarily the person who will ultimately benefit from the recovery." (internal citations omitted)).

(d) In fact, Plaintiff alleges that both "the Commonwealth of Kentucky <u>and participants</u> in Commonwealth-funded health plans bore [the costs associated with alleged Avandia-related injuries.]" Complaint ¶ 66 (emphasis added).

(e) Moreover, Plaintiff makes repeated reference to the effect of GSK's conduct on Kentucky citizens and healthcare providers. *See, e.g.,* Complaint ¶¶ 78, 83, 91, 106. Accordingly, these entities and individuals are real parties in interest in this case.

11. As in *Au Optronics*, the Commonwealth is acting "essentially as a class representative." 701 F.3d at 801. In *Hood ex rel. Mississippi v. Eli Lilly & Co. (In re Zyprexa Prods. Liab. Litig.)*, 671 F. Supp. 2d 397, 402 (E.D.N.Y. 2009), which involved a suit by the State of Mississippi, very similar to the instant case, against the manufacturer of a prescription drug, the court recognized that "[i]n effect, . . . Mississippi's individual claim is structured on the foundation of many thousands of conceptually separate claims associated with individual patients, coordinated and aggregated by the State . . . ."

#17941088 v3

12. It is apparent from the Complaint that the real parties in interest number far more than 100. As Plaintiff acknowledges, approximately 370,000 Kentucky citizens have diabetes, Complaint ¶ 15, a number of whom have likely been prescribed Avandia. The Kentucky Employee Health Plan, whose participants are among the real parties in interest, provides coverage for over 268,000 participants. *See* http://personnel.ky.gov/dei/aboutus.htm [last accessed March 13, 2013]. Plaintiff avers that Kentucky citizens and Commonwealth-funded health plans have paid "millions" for Avandia. Complaint ¶ 22.

13. The claims of these real parties in interest involve common questions of law and fact under Plaintiff's claims under the Kentucky False Advertising Statute; the Kentucky Food, Drug, and Cosmetic Act; the Kentucky Consumer Protection Act; and the Kentucky Insurance Code; as well as common law claims for unjust enrichment; strict products liability – failure to warn; strict products liability – design defect; fraud and negligent misrepresentation; negligence; breach of express warranty; breach of implied warranty; and public nuisance.

14. The minimal diversity requirements of CAFA are also met. Defendant GSK is a limited liability company formed under the laws of Delaware. "[T]he citizenship of a LLC is determined by the citizenship of all of its members." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008). GSK's sole member is GlaxoSmithKline Holdings (Americas) Inc., which is a Delaware corporation with its principal place of business in Wilmington, Delaware. Therefore, GSK is a citizen of Delaware for purposes of determining diversity. *See* 28 U.S.C. § 1332(c)(1). On Plaintiff's side, the real parties in interest include citizens of Kentucky, including participants in Commonwealth-funded health plans.[2]

---

[2] GSK reserves the right to also remove this case on the basis of complete diversity under 28 U.S.C. § 1332(b) should facts become apparent that for Plaintiff, all real parties in interest are citizens of Kentucky. *See Nicholson v. National Accounts, Inc.*, 106 F. Supp. 2d 1269, 1271 (S.D. Ala. 2000) (A defendant may attempt a second removal of a case "where subsequent pleadings or events reveal a new and different basis for removal.")

15. The aggregate amount in controversy exceeds $5,000,000. While Plaintiff's Complaint does not explicitly quantify the amount of damages sought, the Complaint alleges that the Commonwealth and Kentucky citizens were defrauded of "millions" of dollars as a result of GSK's alleged wrongful conduct. *See* Complaint ¶ 22. Plaintiff also seeks punitive damages and extensive civil penalties for GSK's numerous alleged violations of the Kentucky Consumer Protection Act potentially totaling in the tens of millions of dollars. *See* Complaint, Prayer for Relief. Therefore, the damages sought by Plaintiff must exceed $5,000,000.

16. In addition, for at least one of, and likely for a substantial number of, the real parties in interest, the amount in controversy exceeds $75,000. The Commonwealth-funded health plans, which are themselves parties in interest, plainly have claims for millions of dollars. In addition, claims for medical care and expenses by individual patients frequently surpass the $75,000 threshold, including care for the types of injuries here. For example, Plaintiff alleges that Avandia resulted in injuries to participants in Commonwealth-funded health plans, "including, but not limited to, heart injury, excessive fluid retention, fluid-overload disease, liver damage, liver failure, stroke and/or severe injury of the heart leading to cardiac arrest, and death . . . . Complaint ¶ 2. Such claims could plainly exceed $75,000.

---

(citing *Browning v. Navarro*, 743 F.2d 1069, 1079 n.29 (5th Cir. 1984); *O'Bryan v. Chandler*, 496 F.2d 403, 410 (10th Cir. 1974); *One Sylvan Road North Assocs. v. Lark Int'l, Ltd.*, 889 F. Supp. 60, 62 (D. Conn. 1995)). The State, which is not citizen of any State for diversity purposes, is a nominal party. However, to the extent the State seeks damages on its own behalf, it does so primarily on behalf of the Public Employee Health Insurance Program. GSK requires further discovery to determine whether the Public Employee Health Insurance Program is a citizen of Kentucky for purposes of diversity or an arm of the Commonwealth and not a citizen of any state. *See Public Emples. Ret. Ass'n of N.M. v. Clearlend Sec.*, 798 F. Supp. 2d 1265, 1270 (D.N.M. 2011) (holding that removal was premature when Defendant could have served interrogatories to determine whether plaintiff was an "arm of the State" for purposes of determining diversity jurisdiction"); *see also Brantley v. Safeco Ins. Co. of Am.*, 2011 U.S. Dist. LEXIS 86393 (W.D. Ky. Aug. 4, 2011) (In the Sixth Circuit, "the thirty-day period for removal only starts to tick when a defendant has solid and unambiguous information that the case is removable.").

### III. FEDERAL QUESTION JURISDICTION EXISTS BECAUSE PLAINTIFF'S STATE LAW CLAIMS ARE PREMISED ON ALLEGED VIOLATIONS OF THE FDCA AND ITS IMPLEMENTING REGULATIONS

17. This Court has jurisdiction under 28 U.S.C. § 1331 because Plaintiff's state law causes of actions require application of federal law.

> Federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.

*Gunn v. Minton*, No. 11-1118, slip op. at 6, 568 U. S. ___ (2013); *accord Grable & Sons Metal Prods., Inc.* v. *Dance Eng'g & Mfg.*, 545 U.S. 308 (2005). It is appropriate for federal courts to exercise jurisdiction, where, as here, the issue is important "to the federal system as a whole." *Id.* at 8.

18. Here, Plaintiff's claims require construction and application of the federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301, *et seq.*, which governs approval of prescription drugs and regulates prescription drug manufacturers' public and promotional statements, including all aspects of warning and labeling. *See Montana ex rel. McGrath v. Eli Lilly & Co. (In re Zyprexa Prods. Liab. Litig.)*, No. 04-MD-1596, 2008 U.S. Dist. LEXIS 10355 (E.D.N.Y. Feb. 12, 2008) (In a similar action brought by the Attorney General of Montana, the court recognized federal question jurisdiction because the State's claims "necessarily raise[d] substantial federal questions by requiring the court to interpret the meaning of the FDCA and its implementing regulations.").

19. This case involves numerous allegations that GSK violated the FDCA and its implementing regulations. *See e.g.,* Complaint ¶ 2 (alleging that GSK failed to adequately warn the FDA of Avandia's risks), ¶¶ 32, 42, 52 (alleging that GSK did not timely report data to the FDA); ¶ 41 (alleging that GSK "minimized" unfavorable data in communications with the

-8-

FDA), ¶ 44 (alleging that GSK did not comply with its post-marketing commitments to FDA). Although GSK disputes these allegations, the Commonwealth has chosen to inject into its case numerous allegations about GSK's compliance with federal regulations and about GSK's relationship with the FDA.

20. The promotion of prescription drugs within the United States is subject to extensive regulation by the FDA. The FDCA requires the FDA to ensure that "drugs are safe and effective" for their intended uses, 21 U.S.C. § 393(b)(2)(B), in part by "promptly and officially reviewing clinical research and taking appropriate action on the marketing of regulated products. . . ." 21 U.S.C. § 393(b)(1). The Secretary of the FDA has the authority to promulgate regulations to enforce the FDCA, which are codified in the Code of Federal Regulations, 21 C.F.R. § 200, *et seq.* 21 U.S.C. § 371(a).

21. The FDA's responsibility to regulate prescription drugs sold in the United States, and to enforce laws with respect to such drugs, inclusive of the precise content and format of prescription drug labeling (*e.g.* the instructions, warnings, precautions, adverse reaction information provided by manufacturers, and marketing materials), is plenary and exclusive. *See* 21 U.S.C. § 301, *et seq.*

22. Accordingly, Plaintiff's claims regarding the promotion of Avandia will raise substantial federal questions that are appropriately resolved in a federal forum. The availability of a federal forum to protect the important federal interests at issue is consistent with the Supreme Court's pronouncements in *Grable* and *Gunn.*

23. Determination by a federal court of the substantial and disputed federal issues that lie at the heart of this case would not "disturb[ ] any congressionally approved balance of federal and state judicial responsibilities." *Grable,* 545 U.S. at 314. Resolution of these

-9-

issues in federal court will not disrupt or conflict with the federal-state balance contemplated by Congress in the FDCA because Congress gave the FDA exclusive authority to enforce the FDCA. 21 U.S.C. § 337.

24. Moreover, federal jurisdiction over state attorney general actions such as this, which are few in number, but vast in scope, does not disrupt the federal/state balance in the way that the balance is implicated by the exercise of federal jurisdiction over individual tort suits, *see Merrell Dow Pharms. v. Thompson*, 478 U.S. 804 (1986), or legal malpractice claims, *see Gunn*, No. 11-1118, slip op.

25. Additionally, while Plaintiff's Complaint does not specify the damages sought, its far reaching claims could potentially subject GSK to extensive actual and punitive damages and civil penalties for alleged conduct that in some respects was also the basis of a civil settlement with the federal government regarding the marketing of Avandia.[3] *See* Civil Settlement Agreement, *available at* http://www.justice.gov/opa/gsk-docs.html. This case thus implicates the Eighth Amendment's prohibition on excessive fines and the principles limiting excessive damages articulated by the Supreme Court in *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003), which provides another basis for a federal interest in jurisdiction over Plaintiff's claims.

## IV. SUPPLEMENTAL JURISDICTION EXISTS OVER ANY CLAIMS THAT ARE NOT INDEPENDENTLY REMOVABLE

26. The Court has power to, and should, exercise supplemental jurisdiction over any claims that are not independently removable because all claims in the Petition "form part of the same case or controversy under Article III." 28 U.S.C. § 1367(a).

---

[3] Plaintiff's allegations here regarding the promotion of Avandia are more extensive than those resolved through the federal civil settlement.

#17941088 v3

-11-

**V.      PROPRIETY OF REMOVAL**

27.     For the foregoing reasons, this Court has jurisdiction over this matter.

28.     This Notice of Removal is timely.  The Complaint was served on February 22, 2013.  This Notice of Removal is timely filed within thirty (30) days after receipt by GSK of the initial pleading setting forth the claim for relief upon which the action is based.  *See* 28 U.S.C. § 1446(b).

29.     The United States District Court for the Eastern District of Kentucky is the federal judicial district embracing the Commonwealth of Kentucky, Franklin Circuit Court, where this suit was originally filed.  28 U.S.C. § 98(b).  Removal to this District is therefore proper under 28 U.S.C. § 1441(a).

30.     GSK will promptly file a true and correct copy of this Notice with the Clerk of the Commonwealth of Kentucky, Franklin Circuit Court, in accordance with 28 U.S.C. § 1446(d), and serve Plaintiff's counsel with a true and correct copy of this Notice of Removal, in accordance with 28 U.S.C. § 1446(d).

WHEREFORE, GSK notices the removal of this case to the United States District Eastern District of Kentucky pursuant to 28 U.S.C. §§ 1331, 1332, 1441 and 1446.

-12-

*/s/ Carol Dan Browning*
Carol Dan Browning
Kristina M Wetterer
STITES & HARBISON, PLLC
400 West Market Street
Suite 1800
Louisville, KY 40202-3352
Telephone: (502) 587-3400
and

Nina M. Gussack
Kenneth J. King
Hyung P. Steele
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Telephone: (215) 981-4000

COUNSEL FOR DEFENDANT,
GLAXOSMITHKLINE LLC, FORMERLY
SMITHKLINE BEECHAM CORPORATION
D/B/A GLAXOSMITHKLINE

-12-

#17941088 v3

-13-

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing Notice of Removal was electronically filed using the CM/ECF System and that a copy was mailed, first-class mail, postage pre-paid, to the following on this 25th day of March, 2013:

| | |
|---|---|
| Robyn R. Bender<br>Assistant Deputy Attorney General<br>Office of the Attorney General<br>The Capitol Building<br>700 Capital Avenue, Suite 118<br>Frankfort, KY 40601<br><br>Elizabeth Ungar Natter<br>Dinah L. Koehler<br>Tyler S. Stewart<br>Assistant Attorneys General<br>Office of Consumer Protection<br>Office of the Attorney General<br>1024 Capital Center Dr., Suite 200<br>Frankfort, KY 40601 | Lawrence L. Jones II<br>Jasper D. Ward<br>A. Layne Stackhouse<br>JONES WARD PLC<br>Marion E. Taylor Building<br>312 S. Fourth Street, 6th Floor<br>Louisville, KY 40202 |

      */s/ Carol Dan Browning*
      Carol Dan Browning

#17941088 v3